# Office of Disciplinary Counsel
**SUPREME COURT OF THE STATE OF DELAWARE**

The Renaissance Centre
405 North King Street, Suite 420
Wilmington, DE 19801
(302) 651-3931
(302) 651-3939 (Fax)
https://courts.delaware.gov/odc

**DAVID A. WHITE**
Chief Disciplinary Counsel

**KATHLEEN M. VAVALA**
Disciplinary Counsel

**JESSICA L. TYLER**
Disciplinary Counsel

August 15, 2022

**<u>CONFIDENTIAL</u>**

Gail Olsen
U.S. District Court, ED of PA
2609 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

**Re: Meghan M. Kelly, Esquire**
**<u>Supreme Court No. 58, 2022</u>**

Dear Ms. Olsen:

By Order dated August 10, 2022, the Delaware Supreme Court transferred Meghan M. Kelly, Esquire to disability inactive status, pursuant to Rule 19(b) of the Delaware Lawyers' Rules of Disciplinary Procedure.

Sincerely,

Kathleen M. Vavala

KMV:aj
Enclosure (Certified Order)

cc: Meghan M. Kelly, Esq. (w/o encl.)

IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF A MEMBER § 
OF THE BAR OF THE SUPREME § No. 58, 2022
COURT OF DELAWARE § Board Case No. 115327-B
§
MEGHAN M. KELLY, §
    Respondent. §

Submitted:  June 7, 2022
Decided:  August 10, 2022

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

### ORDER

**PER CURIAM**:

It appears to the Court that:

(1)    This is an attorney disability proceeding.  On February 18, 2022, a panel of the Board on Professional Responsibility ("the Board") filed its report and recommendation ("the Report") with this Court.  The Report recommended that the Court transfer the respondent, Meghan M. Kelly, Esquire, to disability inactive status under Rule 19(b) of the Delaware Lawyers' Rules of Disciplinary Procedure ("DLRDP").  Kelly filed objections to the Report, ODC responded to the objections, and Kelly filed a reply in support of her objections.[1]  For the reasons set forth below, the Court accepts the Report and transfers Kelly to disability inactive status.

---

[1] On the same day her reply was due, Kelly filed a motion to exceed the 5,000 word-count set by the Court on March 29, 2022.  Although the motion failed to identify the amount of additional words requested and the reply is almost double the 5,000 word-count, the Court grants the motion. Based on her misreading of Court of Chancery Rule 178B, which applies to guardianship matters

## I.    FACTS AND PROCEDURAL HISTORY

### A. Kelly's Litigation against then-President Trump

(2)    Kelly was admitted to the Delaware Bar in 2007.  After her admission to the Bar, she worked for several law firms.  Kelly has not been employed as a lawyer since 2016, but has repeatedly expressed a desire to rejoin a law firm that previously employed her.

(3)    On September 21, 2020, Kelly filed a nearly 500-paragraph complaint against then-President Donald Trump in the Court of Chancery.  Kelly alleged that Trump had violated the First Amendment by creating the illusion of government sponsored religion, burdening her free exercise of religion, and adopting Executive Order 13798.  She also filed a motion to expedite and a motion for a temporary restraining order.  Kelly subsequently filed two amended complaints.  On November 2, 2020, a Master in Chancery issued a final report recommending dismissal of the complaint as legally frivolous under 10 *Del. C.* § 8803(c).  Kelly filed exceptions, which a Vice Chancellor overruled.[2]

(4)    On April 21, 2021, Kelly filed a notice of appeal in this Court.[3]  After Kelly filed her opening brief, this Court affirmed, *sua sponte*, the Court of

---

not at issue here, Kelly also filed a motion to be excused from notarization and affirmation requirements in all Delaware courts.  That motion is denied.

[2] *Kelly v. Trump*, 2021 WL 1175423 (Del. Ch. Mar. 26, 2021).

[3] With the notice of appeal, Kelly included more than seventy documents she had filed in the Court of Chancery.  The Clerk's Office advised Kelly that the documents would not be docketed as the Court of Chancery was responsible for transmitting the record to this Court under Supreme

Chancery's judgment under Supreme Court Rule 25(c).[4]  Kelly filed a motion for reargument, which was denied.  On November 1, 2021, the United States Supreme Court denied Kelly's petition for a writ of certiorari.

### B. The ODC and Board Proceedings

(5)    On August 23, 2021, ODC informed Kelly that the contents of her filings in the *Trump* action raised serious concerns regarding her mental capacity and fitness to practice law.  Based on these concerns, ODC asked Kelly to voluntarily submit to a mental health examination to determine her mental capacity and fitness to practice law.  ODC advised that if Kelly if did not undergo the examination scheduled for September 7, 2021, ODC would petition the Board to order such an examination.  In response, Kelly ordered ODC to stop contacting her and stated that she would not undergo a mental health evaluation because it was against her religious beliefs.

(6)    After obtaining the approval of the Preliminary Review Committee ("PRC") on November 3, 2021, ODC filed a petition on November 5, 2021 to transfer Kelly to disability inactive status under DLRDP 19(c).  The petition alleged that the contents of Kelly's filings in this Court and the Court of Chancery lacked focus and clarity, were objectively illogical, relied on non-legal sources, including

---

Court Rule 9(b).
[4] *Kelly v. Trump*, 2021 WL 2836635 (Del. July 7, 2021).

the Bible, instead of appropriate legal authority, and reflected an apparent inability to make rational legal arguments. ODC asked the Board to order Kelly to submit to a mental health examination, to hold a hearing to make findings, and to recommend that this Court transfer Kelly to disability inactive status.

(7)    On November 30, 2021, Kelly filed her answer, defenses, and objections to the petition. The answer had numerous exhibits, including copies of books and articles she had drafted for impeachment of the president.

(8)    On December 10, 2021, the Administrative Assistant to the Board scheduled a hearing on ODC's petition for January 13, 2022. On December 13, 2021, as requested by ODC and objected to by Kelly, this Court appointed counsel ("Counsel") to represent Kelly under DLRDP 19(c), which provides that "[i]f the respondent is not represented by counsel, the Court shall appoint counsel for the respondent." The Court appointed Counsel at no cost to Kelly. Kelly subsequently submitted letters and motions that, among other things, continued to object to the appointment of Counsel and asserted that she needed time to prepare discovery before the hearing.

(9)    After Kelly repeatedly objected to Counsel's appointment, asserted that she wished to represent herself, shared Counsel's advice with multiple individuals, and purported to fire Counsel, Counsel filed  a motion to remove counsel with the

Court. On December 30, 2021, the Court granted the motion and permitted Kelly to represent herself.

(10)   On January 4, 2022 and January 10, 2022, Kelly filed objections to the proceeding. She also sent requests for postponement of the hearing, sometimes based on her objections to the proceeding and need for additional time to prepare a defense and sometimes based on a physical illness she said she was suffering. ODC was amenable to a one-week extension of the hearing based on Kelly's representations that she was suffering a physical illness.

(11)   On January 11, 2022 Kelly filed emergency objections and an emergency motion to postpone the hearing with the Board and this Court. That same day this Court denied the motion, ruling that the hearing panel chair decided scheduling matters and that the decision of the panel chair or panel could not be appealed before submission of the panel's report and recommendation. The Court advised Kelly that when the panel submitted its final report and recommendation, she would have the opportunity to object to the report as well as any prior rulings of the panel chair. The panel chair granted Kelly's motion in part, postponing the hearing until January 21, 2022.

(12)   Notwithstanding this Court's January 11th order, Kelly appealed the postponement order to this Court. The Court denied the motion for the reasons stated in its January 11th order, and advised that it would not rule on any further frivolous

motions or appeals Kelly filed before the panel submitted its final report and recommendation. On January 13, 2022, ODC filed its opposition to Kelly's January 11th filings.

(13)  On January 15, 2022, Kelly filed a motion for emergency relief with the Board seeking additional time to obtain discovery and prepare a defense. She asserted similar claims in emails sent on January 18th and January 19th. The Board panel denied Kelly's request for another continuance of the hearing date.

(14)  On January 21, 2022, the Board panel held the hearing via Zoom. The Board panel heard Kelly's testimony as well as the arguments of ODC and Kelly. At the end of the hearing, ODC asked the Board panel to order Kelly to undergo a mental health evaluation by a qualified mental health expert. Kelly objected to a mental health evaluation as against her religious beliefs. She also objected to the proceedings as violating her constitutional rights.

(15)  After the hearing, Kelly filed motions for a protective order against a mental health examination. She also submitted corrections to the transcript of the January 21st hearing. On February 17, 2022, the Board panel issued the Report. In the Report, the Board panel recommended that Kelly be transferred to disability inactive status until she submits to a mental health evaluation conducted by a qualified expert who certifies her mental fitness for the practice of law.

### C. Kelly's Appeal to this Court

(16)    On February 18, 2022, the Report was docketed in this Court.    The Court Clerk advised the parties that any objections to the report were due on March 10, 2022.    On March 1, 2022, the Court granted Kelly's motion for an extension of time to file objections to the Report.    On March 21, 2022, Kelly filed 136 pages of objections and a 24-page memorandum in support of her objections.    She also filed more than 2,000 pages of exhibits.    On April 21, 2022, ODC responded to the objections.    On June 7, 2022, after receiving a fifteen-day extension, Kelly filed her reply.

## II.    DISCUSSION

### A.    Standard of Review

(17)    This Court is not bound by the Board panel's recommendation, and must independently review the Board panel's findings of fact to determine whether the record contains substantial evidence to support those findings.[5]    We review the Board panel's conclusions of law *de novo*.[6]

(18)    DLRDP 19 governs disability proceedings.    The relevant portions of that rule provide:

> *Proceedings to Determine Incapacity*.    Information relating to a lawyer's physical or mental condition which adversely affects the lawyer's ability to practice law shall be investigated by the ODC.    If

---

[5] *In re Abbott*, 925 A.2d 482, 484 (Del. 2007).
[6] *Id.*

there are reasonable grounds to believe the interests of respondent's clients or the public are endangered, such information shall be the subject of formal proceedings to determine whether the respondent shall be transferred to disability inactive status. The procedures and hearings shall be conducted in the same manner as disciplinary proceedings. The Board may take or direct whatever action it deems necessary or proper to determine whether the respondent is so incapacitated, including the examination of the respondent by qualified medical experts at the respondent's expense. If, after reviewing the recommendation of the Board and upon due consideration of the matter, the Court concludes that the respondent is incapacitated from continuing to practice law, it shall enter an order transferring the respondent to disability inactive status for an indefinite period and until further order of the Court. Any pending disciplinary proceedings against the respondent shall be held in abeyance.

The Board shall provide for such notice to the respondent of the proceedings in the matter as it deems proper and advisable. If the respondent is not represented by counsel, the Court shall appoint counsel for the respondent.[7]

The standard of proof for a transfer to disability inactive status is clear and convincing evidence.[8]

### B.    Kelly is Incapacitated from Continuing to Practice Law

(19)   Having considered the Board panel's recommendation, the parties' arguments, and the record, we must find that Kelly is incapacitated from continuing to practice law and should be transferred to disability inactive status.

---

[7] DLRDP 19(c)
[8] *Id.* 15(c).

We reach this conclusion for somewhat different reasons than those articulated by the Board panel.[9]

(20)   As the Board panel  recognized, admission to the Delaware Bar requires attorneys to take an oath or affirmation to "support the Constitution of the United States and the Constitution of the State of Delaware" and to "behave…in the office an Attorney within the Courts" to the best of their "learning and ability and with all good fidelity as well to the Court as to the client."[10]  Delaware attorneys must also comply with the Delaware Lawyers' Rules of Professional Conduct ("DLRPC"), which require attorneys to represent clients competently,[11] not undertake a representation if their physical or mental condition materially impairs their ability to represent a client,[12] and refrain from engaging in conduct prejudicial to the administration of the justice.[13]  The legal "profession holds out to the public all its members in good standing as being competent, honest and devoted to their clients' interests."[14]

---

[9] The Board concluded that Kelly was "unable to separate her individual political and religious pursuits from her legal practice and from the duties she owes to the Court and the professional practice within this State as a licensed attorney."  Report at 5.

[10] Del. Supr. R. 54.  *See also* 10 *Del. C.* § 1907 (requiring attorneys to take oath upon admission to the Delaware Bar).

[11] DLRPC 1.1 ("Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.").

[12] *Id.* 1.16(a)(2).

[13] *Id.* 8.4(d).

[14] *In re Member of Bar*, 257 A.2d 382, 383 (Del. 1969).

(21)   The special responsibilities of attorneys are not limited to their representation of clients.  As set forth in the DLRPC Preamble, "[a] lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice."[15]  "Lawyers play a vital role in preservation of society….fulfillment of this role requires an understanding by lawyers of their relationship to our legal system." [16]

(22)   Many of Kelly's submissions in the *Trump* action and these proceedings were confusing and unfocused, irrelevant to the issues at hand, demonstrated a lack of understanding of the role of courts, and were non-compliant with court rules.  For example, in her motion for a page and word count extension under Supreme Court Rule 14(d) in the *Trump* action, Kelly failed to specify the number of additional pages she needed, but did include the following in a footnote:

> I did not know how bad the world was until I ran for office.  We do not have a free market. We have a manipulated marked, a slave market, where the government gives grants to entities, charities, not for profits, businesses and charities, entities without hearts ("beasts"), who try to get as much as they can for as little as they can to serve their life line, the bottom line, at the cost of exploiting consumers, the environment, workers and the world to create a manufactured market in exchange with bought loyalty, or the potential loyalty, to leaders who feed their greed.

---

[15] DLRPC Preamble [1].
[16] *Id.* [13].

Adam Smith's theories, the alleged founder of capitalism, is not based on a free market. It is on a manipulated slave market, based on the mark of children of the devil, that humans will behave based on getting as much as they can for as little as they can, supply and demand, without regard, love, which is concern, for others unless it affects them….

In a temporary trial to Westlaw, I glimpsed at global agreements relating to the World Bank. I discovered we do not have a free market at a global level….The solution is just laws, just policies, and justice in the courts, not more money.  Justice in the courts legislating love, by concern, or requiring people and entities to care for others, or get corrected, will not only prevent harm here, but will guide people to the way of eternal life, should they remain in love.  Are the eyes of the courts darkened on money, merriment or material gain? Matthew 6:21-33.  Or do the courts look at people with love, protecting even those they are protecting, willing to break away from laws drafted by beasts without hearts, entities, who look at cold hard cash, play money to buy favors in their manipulated economy, to look at people with love, rendering true justice per Jesus. *Matthew* 23:23….Courts must not blindly follow laws that reward evil as good.  Courts must seek to decrease temptations to sin, protecting the people from the enemy, temptations to sin, by using the Constitutional limits to render unjust decrees, and policies unconstitutional lawlessness….

Creating a different economic model is not the solution, such as communism….Since laws, per se are written to serve the bottom line, at the cost of unconcern, absence of love for humanity, this Court can teach the entities that control the world, LLCs, organizations who buy leaders by tempting them to whored loyalty by donations and support in an unholy, bought or bartered for, not free, but whored union of government-private interest greed, not love, to adhere to the rule of law, not the lawless reign of lusts.  The courts and the law makers should teach love of humanity, not the mark of the devil, exploitation of humanity, to serve your own family or interest. This court must tame the beasts with constitutional limits, by taming those who are enslaved by the desires the beasts tempt lawmakers and the executive branch with, the government.  The law makers are blinded by their desire to keep their powerful seats. So is the executive branch.  Your seats are not gained by popularity, but by impartiality to enable you to check the

other two branches with the loving heavy hand of justice, guiding them to do right, never with revenge. Instead with love and correction to prevent their condemnation in hell, and harm to victims of their sins here. My hope is in the courts. *Amos* 5:15. On a side note, I am sad dead men like Adam Smith and B.F. Skinner are misleading people to hell past their fleeting lives. Their lies, accepted as truth, prevent many from being saved by truth of love.[17]

(23)   Not only did the footnote exceed the 1,200 word count for motions,[18] it was irrelevant to Kelly's request for an extension. Attorneys and non-attorneys regularly file requests for page-extensions that specify the additional words or pages sought and that fall well-within the 1,200 word count or four-page limit for motions. Kelly was unable to do so.

(24)   With her answer to the disability petition, Kelly included a number of irrelevant exhibits, including almost two-hundred pages of *The Fourth Industrial Revolution* by Klaus Schwab, more than two-hundred pages of *COVID-19: The Great Reset* by Klaus Schwab and Thierry Malleret, and approximately sixty pages of *The Creature from Jekyll Island: A Second Look at the Federal Reserve* by G. Edward Griffin.[19] She submitted these books again with her objections to the Report in this Court.[20] The subject matter of these books has no relevance to the proceedings.

---

[17] *Kelly v. Trump*, No. 119, 2021 (Del. June 4, 2021), D.I. 28 at n.1.
[18] Del. Supr. Ct. 30(d).
[19] Meghan M. Kelly's Answer, Defenses, and Objections, Exs. 16, 17, 18.
[20] Respondent Meghan Kelly's Objections to Report and Recommendation, Ex. K.

(25)   Kelly also sent ODC or copied ODC on strange emails.  On December 21, 2021, for example, Kelly copied ODC and the Delaware U.S. Attorney on an email requesting a replacement Bar identification card from the Clerk of this Court.[21]  Kelly said she needed a replacement card because she had mailed her original card to her former employer in expectation of working again as a real estate attorney.[22]   On January 5, 2022, Kelly emailed ODC, the Board and Court Administrator, and the Court Clerk the following:

> I am feeling worse today.  I am losing my voice, very dehydrated, and am experiencing more unpleasant symptoms.  Per the message and pictures below, it appears I smell like death.  I have been getting attacked by buzzards and I am seeking the state's help.

> Should anything happen to me, and I am unable to get back to you I apologize.

> Thank you for your understanding during this global pandemic and time of uncertainty.[23]

With the email, Kelly forwarded photographs of birds outside her house and an email she had sent to various government officials pleading for help with the birds.[24]  In another January 5, 2022 email to ODC, Kelly expressed various views, including her belief that "people go to hell for fundraising and organized charity should they not

---

[21] ODC Hearing Exhibits Ex. 7, Email dated December 21, 2021 at 10:48 p.m.
[22] Id.
[23] Id. Ex. 8, Email dated January 5, 2022 at 8:40 a.m.
[24] Id. Ex. 8, Email dated January 5, 2022 at 8:12 a.m. ("They have been watching me for some time before they made attacks, swooping in on me, with quick escapes. I almost didn't make it. The claws were so close.").

repent of such wickedness," libel laws "protect serving what I believe is the beast spoken of in Revelations, business greed, at the cost of killing, stealing and destroying people," and that "[t]here is a plan to harm humanity to control humanity by eliminating the governments' power to govern, and the eventual elimination of our government." [25]

(26)    Kelly's concerning behavior continued throughout the hearing.  As the Board panel discussed in its Report, Kelly struggled to log into the hearing and provided "confused and wandering" responses to questions concerning her computer problems.[26] Kelly expressed suspicion that someone was hacking into her computer because "I had contacted so many people who are in power and I had sued the president."[27]

(27)    During her presentation, Kelly read aloud portions of her filings and recited her religious, political, and economic beliefs.[28] Despite at least two requests from the Board panel, Kelly read aloud from her filings instead of explaining how the filings supported her position that she was competent to practice law.[29]  The excerpt below is typical of the unfocused and irrelevant nature of much of Kelly's presentation:

---

[25] *Id.* Ex. 9, Email dated January 5, 2022 at 12:57 p.m.
[26] Report at 5.  *See also* Transcript of January 21, 2022 Hearing (hereinafter referred to as "Hearing Tr.") at 13-25.
[27] Hearing Tr. 64.
[28] *Id.* at 99-173.
[29] *Id.* at 104, 144-45.

In this book you are going to see at the back of the book they talk about tracking people sort of like the green pass and the clear pass which were created before the pandemic. When I had my computer before it was broken, I was able to look up things. They also talked about biomedical experiments on people and things that they intended to do which weren't to care for people, they were to control people and to care for profit.

So, if you look at The Fourth Industrial Revolution by Klaus Schwab it sort of outlines his plans and weird stuff like mind control. I don't believe our minds can be controlled, not by biology despite behaviorists' theories, not by chemistry despite people saying chemicals can change your state of mind or your mind, but I believe we have free will, the ability to independently think, to care, to know, to love and the deception is that they had alluded to controlling the mind, battlefield of the mind, is to deceive people to think that they don't have a choice, that they can't think independently to choose to care, to know, to love one another because I believe the command by God is to love God foremost and love one another as yourself. [30]

(28)   There was substantial evidence to support the Board panel's factual findings. Kelly's inability to make to make cogent legal arguments, present relevant evidence, or identify relevant legal authority is painfully clear from the record. Given the record and Kelly's repeated objections to a mental health exam, the Board panel's election not to order Kelly to undergo a mental health exam, as permitted by Rule 19(c) and requested by ODC, was reasonable. It is plain from Kelly's conduct that a physical or mental condition is adversely impacting her ability to practice law. Although Kelly is not presently representing any clients, she has repeatedly

---

[30] *Id.* at 122-23; List of Corrections to Hearing dated January 21, 2022.

expressed a desire to rejoin a former law firm employer.[31]  Kelly's lack of

competence to practice law endangers prospective clients, the public, and the orderly

administration of justice.  ODC satisfied its burden of demonstrating by clear and

convincing evidence that Kelly is incapacitated from continuing to practice law and

should be transferred to disability inactive status.

### C.    Kelly's Objections Lack Merit

(29)    Kelly's objections to the Report may be summarized as follows: (i) this

Court lacks subject matter jurisdiction over the proceedings; (ii) these proceedings

violate her right to due process and equal protection under the Fourteenth

Amendment of the United States Constitution; and (iii) these proceedings violate her

right to free exercise of religion and free speech under the First Amendment of the

United States Constitution.  Kelly's objections are without merit.

### 1. This Court has subject matter jurisdiction

(30)    Contrary to Kelly's contentions, the disability proceeding was not

subject to dismissal for lack of subject matter jurisdiction.  This Court "alone, has

sole and exclusive responsibility over all matters affecting governance of the Bar."[32]

---

[31] *See, e.g., supra* n.22; Hearing Tr. 73-83.
[32] *In re Appeal of Infotechnology, Inc.,* 582 A.2d 215, 216–17 (Del. 1990).  *See also In re Mekler,* 669 A.2d 655, 664 (Del. 1995) ("It is the exclusive responsibility of this Court to supervise, regulate and discipline members of the Delaware Bar."); *In re Green,* 464 A.2d 881, 885 (Del. 1983) (describing this authority as "based on the concept, taken from England, that the courts possess the exclusive right to govern the practice of law"); *Member of the Bar,* 257 A.2d at 383 ("The authority, as well as the duty, to establish the Bar and to maintain its standards exists inherently in this Court as the highest court of the State, independent of any statutory grant of

This authority is necessary "for the proper administration of justice, which can be achieved only if the procedures and practices of the courts are fair and reasonable, and the officers of the court, the lawyers, are competent and ethical." [33]   Under its authority, the Court maintains "appropriate standards of conduct for all lawyers subject to its jurisdiction" and "dispose[s] of individual cases of lawyer...disability."[34]

(31)   Kelly contends that this Court lacks subject matter jurisdiction based primarily[35] on her mistaken and unfounded belief that the Chief Justice caused ODC, the Delaware Lawyer Assistance Program ("DE-LAP"), and a Court of Common Pleas judge to "threaten," "harass," and "attack[]" her after she requested that this Court waive annual registration fees for Delaware attorneys in early 2021.[36]   None of the panel members referred Kelly to ODC or DE-LAP or communicated with the Court of Common Pleas Judge about Kelly.   To the extent Kelly suggests this Court loses subject matter jurisdiction over disability or disciplinary proceedings any time a member refers an attorney to ODC or DE-LAP, this is contrary to the Court's

---

authority, although there does exist in our Code such authority.").

[33] *Member of the Bar*, 257 A.2d at 383.

[34] DLRDP 1(a).

[35] She also seems to argue that the Court's violation of her constitutional rights deprived it of subject matter jurisdiction.  We address the constitutional claims later in this order.

[36] Memorandum of Law ¶¶ 6-14.  Kelly also contends that these entities and individuals, among others, interfered with her case against Trump, and pressured her to drop the case.  As set forth in the decisions of this Court and the Court of Chancery, the dismissal of Kelly's case resulted from her own pleading deficiencies, not the interference of third parties.  *Kelly*, 2021 WL 2836635; *Kelly*, 2021 WL 1175423.

exclusive jurisdiction over such matters[37] and the duties of judicial officers under the Delaware Judges' Code of Judicial Conduct.[38]

## 2. There were no violations of Kelly's right to due process or equal protection

(32)   Kelly's claims of due process and equal protection violations are without merit.  Proceedings to determine attorney incapacity, which are conducted in the same manner as disciplinary proceedings,[39] contain extensive procedural due process protections for respondents.[40]   These protections include: (i) notice of ODC's intent to present a petition to transfer to disability inactive status to the PRC and the opportunity to submit a written statement for the PRC to consider;[41] (ii) the PRC's determination of whether there is probable cause to support the petition;[42] (iii) if the petition is approved by the PRC, the opportunity to file an answer to the petition;[43] (iv) if the respondent is unrepresented, the appointment of counsel;[44] (v)

---

[37] *See supra* ¶ 30.
[38] Del. Judges' Code of Judicial Conduct R. 2.14 ("A judge, having a reasonable belief that the performance of a lawyer or another judge is impaired by drugs or alcohol, or by a mental, emotional, or physical condition, should take appropriate action, which may include a confidential referral to a lawyer or judicial assistance program."); *Id.* 2.15 ("A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer.").
[39] DLRDP 19(c).
[40] *Abbott v. State Public Integrity Comm'n*, 2019 WL 937184, at *5 (Del. Feb. 25, 2019) (recognizing that the "process for attorney discipline has extensive procedural due process protections" which allow "the [respondent] ability to appeal any determination of the [Board] to this Court').
[41] DLRDP 9(b)(1).
[42] *Id.* 9(b)(3).
[43] *Id.* 9(d).
[44] *Id.* 19(c).

the ability to compel by subpoena the production of documents or witness testimony;[45] (vi) a Board hearing that is recorded;[46] and (vii) the opportunity to submit objections to the Board's report and review of the Board's report and recommendation by this Court.[47]

(33)   Kelly contends that she received untimely notice of the hearing date and was denied a fair opportunity to defend herself.  This argument is without merit. As to the hearing notice, the Board Administrative Assistant issued a notice on December 10, 2021 scheduling the hearing for January 13, 2022.  Kelly says she did not receive the notice by mail until December 24, 2021, less than the twenty days before the original hearing date, but notice is calculated from the date of mailing.[48] In addition, Kelly's filings reflect that she was aware of the hearing date by December 17, 2021.[49]  Kelly did not receive insufficient notice of the hearing.

(34)   As to Kelly's claims that she had insufficient time to conduct research, perform discovery, and subpoena witnesses to support her defense, ODC filed the petition to transfer her to disability inactive status on November 5, 2021.  The

---

[45] *Id.* 12(b)(2).

[46] *Id.* 9(d)(4).

[47] *Id.* 9(e); 19(c).

[48] *Id.* 11(b) (stating that unless otherwise provided service should be made in accordance with the Superior Court Rules of Civil Procedure); Del. Super. Ct. Civ. R. 5(b).  In disability matters, the Board provides notice to the respondent in the manner it deems proper and advisable.  DLRDP 19(c).

[49] December 18, 2021 Letter Regarding, Respondent is entitled to Discovery/Reconsider on Counsel.

hearing was initially scheduled for January 13, 2022 and postponed, at Kelly's request, until January 21, 2022. During that time, Kelly prepared and filed numerous motions in this proceeding. She had more than sufficient time to prepare a defense. Kelly repeatedly advised of her need for discovery, but failed to seek any discovery. Under DLRDP 12(a)(2), a respondent may request that the Court Clerk prepare subpoenas to compel the testimony of witnesses or the production of pertinent documents. Kelly never did so.

(35)   Kelly also challenges the Court's appointment of counsel to represent her. Procedural due process claims involving counsel usually involve the absence or failure to appoint counsel, not the appointment of counsel.[50] To the extent Kelly's objections to the appointment of counsel constitute a claim that this appointment violated her right to self-representation under the Sixth Amendment, this argument is without merit. The Court appointed counsel to represent Kelly in accordance with DLRDP 19(c), which provides that the Court "shall appoint counsel" for a respondent who is not represented by counsel in a disability proceeding. After Kelly's vigorous objections and Counsel moved to withdraw, the Court granted the motion to withdraw and allowed Kelly to represent herself. Thus, even assuming

---

[50] *See, e.g., Watson v. Div. of Fam. Servs.*, 813 A.2d 1101, 1112-13 (Del. 2002) (finding violation of procedural due process where attorney was not appointed to represent a parent at the inception of dependency and neglect proceedings).

Kelly had a Sixth Amendment right to self-representation in the disability proceeding, she was not deprived of that right.

(36)    As to her substantive due process claim, Kelly must show she is being deprived of a property interest that is fundamental under the United States Constitution and that the deprivation is arbitrary, irrational, tainted by improper motive, or through conduct that shocks conscience.[51]  Even assuming Kelly could show deprivation of a fundamental right here,[52] she has not shown that her placement on disability inactive status is arbitrary, irrational, tainted by improper motive, or through conduct that shocks the conscience.  She offers nothing to suggest that the actions of ODC or the Board were motivated by anything other than reasonable concern in response to Kelly's troubling conduct.

(37)    Similarly, Kelly's vindictive prosecution claim is without merit.  A vindictive prosecution arises from "specific animus or ill will."[53]  Kelly has not shown that ODC's petition resulted from any animus or ill will toward her.

---

[51] *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000).

[52] *C.f. Schware v. Board of Bar Examiners of State of N.M.*, 353 U.S. 232, 239 (1957) (holding that a state cannot exclude a person from the practice of law for reasons that violate the Due Process or Equal Protection clauses, but "can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to the bar" as long as the qualifications "have a rational connection with the applicant's fitness or capacity to practice law"); *Edelstein v. Wilentz*, 812 F.2d 128, 132 (3d Cir. 1987) ("We have previously held that the right to practice law is not a fundamental right for purposes of due process or equal protection analysis.").

[53] *State v. Wharton*, 1991 WL 138417, at *10-11 (Del. Super. Ct. June 3, 1991).

(38)    The basis of Kelly's claim of an equal protection violation is unclear. The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."[54]   To the extent Kelly argues that her political or religious beliefs led to selective prosecution by ODC, this implicates equal protection.[55]   To state a claim of selective prosecution, Kelly must show ODC had: (i) a policy to prosecute that had a discriminatory effect; and (ii) was motivated by a discriminatory purpose.[56]   In arguing that ODC prosecuted her for her political or religious beliefs, Kelly ignores that ODC's petition was based on her unfocused and illogical filings, reliance on non-legal sources, including (but not limited to) the Bible, and inability to make rational legal arguments.   Kelly has not shown that ODC had a policy with discriminatory effect or was motivated by a discriminatory purpose.

### 3.  There were no violations of Kelly's First Amendment rights

(39)    The First Amendment protects an individual's free speech and free exercise of religion.[57]   A lawyer's right to free speech is not unlimited.[58]   Kelly

---

[54] U.S. Const. amend. XIV, § 1.

[55] *Albury v. State*, 551 A.2d 53, 61 n.13 (Del. 1988).

[56] *Smalls v. State*, 2015 WL 71631, at *4 (Del. Jan. 5, 2015).

[57] U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.").   The First Amendment applies to the states through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

[58] *In re Shearin*, 765 A.2d 930, 938 (Del. 2000) (holding "there are ethical obligations imposed upon a Delaware lawyer, which qualify the lawyer's constitutional right to freedom of speech") (citing *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991)). *See also Cantwell*, 310 U.S. at 304

contends that this proceeding violated her right to free speech and free exercise of religion by punishing her for expressing religious and political views that the State finds repugnant. She is mistaken.

(40)   It is the unfocused, irrelevant, and incoherent nature of many of Kelly's submissions that led to this proceeding, not her religious or political beliefs as she contends.[59] Kelly's references to her religious and political views throughout her submissions do not shield her from scrutiny concerning her competency to practice law. States have an "an extremely important interest in maintaining and assuring the processional conduct of the attorneys" they license.[60] In the exercise of this Court's exclusive responsibility to supervise and regulate Bar members, we have determined that a physical or mental condition has adversely affected Kelly's ability to practice law, Kelly is incapacitated from continuing to practice law, and Kelly must be transferred to disability inactive status.

NOW, THEREFORE, IT IS ORDERED:

a. Kelly is immediately transferred to disability inactive status under DLRDP 19 until such time that she demonstrates by clear and convincing evidence that any disabilities have been removed.

---

(describing the "freedom to believe" as "absolute," but recognizing that "[c]onduct remains subject to regulation for the protection of society").

[59] See supra ¶¶ 22-26.

[60] Middlesex Cty. Ethics Committee v. Garden State Bar Assoc., 457 U.S. 423, 434 (1982).

b. As set forth in DLRDP 19(e), this Court may take or direct any action upon the filing of a petition for transfer to active status that it deems necessary or proper, including a remand to the Board for a hearing and recommendation to determine whether the disability has been removed, and may order an examination by qualified medical experts.

c. Kelly shall not practice law in this State.

d. This Order shall be made public.

State of Delaware      §
                             § ss.

Kent County            §

       I, Lisa A. Dolph, Clerk of the Supreme Court of the State of Delaware, do hereby certify that the foregoing is a true and correct copy of the Order dated August 10, 2022, *In The Matter of a Member of the Bar of the Supreme Court of the State of Delaware: Meghan M. Kelly*, No. 58, 2022, immediately transferring Respondent to disability inactive status, as remains on file and of record in said Court.

                             IN TESTIMONY WHEREOF,

                             I have hereunto set my hand and affixed the seal of said Court at Dover this 11th day of August, A.D. 2022.

                             */s/ Lisa A. Dolph*           
                             Lisa A. Dolph
                             Clerk of the Supreme Court



**OFFICE OF DISCIPLINARY COUNSEL**

THE RENAISSANCE CENTRE
405 NORTH KING STREET, SUITE 420
WILMINGTON, DE 19801

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300



Gail Olsen
U.S. District Court, ED of PA
2609 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106





